John T. Burnite No. 162223
Catherine J. Baumgartner No. 327062
**McDOWELL HETHERINGTON LLP**
1999 Harrison St., Suite 2050
Oakland, CA 94612
Telephone:   510.628.2145
Facsimile:   510.628.2146
Email:       john.burnite@mhllp.com
             catherine.baumgartner@mhllp.com

Attorneys for Defendant
REFINED TECHNOLOGIES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY YOUNG, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>REFINED TECHNOLOGIES, INC., a Delaware corporation,<br><br>  Defendant. | Case No. 8:22-cv-01032-CJC-JDE<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR IMPROPER VENUE, MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF TEXAS, OR IN THE ALTERNATIVE MOTION TO COMPEL ARBITRATION**<br><br>Date: June 27, 2022<br>Time: 1:30 p.m.<br>Dept.: Courtroom 9B<br><br>Complaint Filed: April 7, 2022<br>Trial Date: None Set |

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.    STATEMENT OF FACTS ......................................................................... 1

    A.    In 2017 Young was hired as operations manager for RTI's West Coast territory. ................................................................................................... 1

    B.    Young agreed that Texas was the exclusive venue for any dispute with RTI arising out of his employment. ..................................................... 3

    C.    Young agreed to arbitrate disputes arising from his employment with RTI. ........... 4

    D.    Young filed suit against RTI in California state court 30 minutes after resigning. ................................................................................................ 5

III.   LEGAL STANDARD ................................................................................. 6

IV.   ARGUMENT AND AUTHORITIES ....................................................... 8

    A.    Young's Complaint must be dismissed for improper venue, or transferred to the Southern District of Texas. .................................................................. 8

        i. The parties' forum selection clause should be enforced.......................... 8

        ii. Transfer to the Southern District of Texas is appropriate to honor the parties agreed venue. ............................................................................ 9

    B.    Young's Claims Must be Arbitrated. ................................................... 12

        i.  The arbitration provision is valid and must be enforced under Texas or California law. ..................................................................................... 12

        ii. Young's claims fall within the purview of the Policy's arbitration provision. ........................................................................................... 14

V.    CONCLUSION ...................................................................................... 16

**Case No. 8:22-cv-01032-CJC-JDE**      ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstar Mktg. Grp., LLC v. Your Store Online, LLC*,
   666 F.Supp.2d 1109 (C.D. Cal. 2009) ...................................................................... 7, 8

*Alvarado v. Pacific Motor Trucking Co.*,
   No. EDCV 14-0504-DOC(DTBx), 2014 WL 3888184 (C.D. Cal. Aug. 7, 2014) ........ 7

*Ambler v. BT Americas Inc.*,
   964 F. Supp. 2d 1169 (N.D. Cal. 2013) ..................................................................... 13

*Argueta v. Banco Mexicano, S.A.*,
   87 F.3d 320 (9th Cir. 1996) .............................................................................. 7, 8, 9

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) .................................................................................................. 13

*Atlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*,
   571 U.S. 49 (2013) ............................................................................................... 9, 10

*Barela v. Brock USA, LLC*,
   No. SACV 15-00779 JVS (JCGx), 2015 WL 12683955, at *4 (C.D. Cal. Aug.
   10, 2015) ................................................................................................................... 15

*Brazoria County v. Knutson*,
   142 Tex. 172, 176 S.W.2d 740 (1943) .................................................................... 14

*Brown v. Dillard's, Inc.*,
   430 F.3d 1004 (9th Cir. 2005) ................................................................................. 13

*Cape Flattery Ltd. v. Titan Mar., LLC*,
   647 F.3d 914 (9th Cir. 2011) ................................................................................... 14

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. (1991) .......................................................................................................... 8

*Cedars-Sinai Med. Center v. Global Excel Mgmt., Inc.*,
   No. CV 09-3627 PSG AJWX, 2010 WL 5572079, at *2 (C.D. Cal., Mar. 19,
   2010) .......................................................................................................................... 7

*Chan v. Society Expeditions, Inc.*,
   123 F.3d 1287 (9th Cir. 1997) ................................................................................... 8

**Case No. 8:22-cv-01032-CJC-JDE**     iii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, TO STAY PENDING ARBITRATION

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) .................................................................... 12, 13, 14

*Dallas Cardiology Assocs., P.A. v. Mallick*,
   978 S.W.2d 209 (Tex. App.—Texarkana 1998, pet. denied) ...................................... 13

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213, 105 S. Ct. 1238, 84 L.Ed. 2d 158 (1985) .............................................. 12

*Doe 1 v. AOL, LLC*,
   552 F.3d 1077 (9th Cir. 2009) ................................................................................... 7

*Duck Dive LP v. Heydar*, Civ.
   No. 13-cv-1477-BTM (BLM), 2013 WL 5724050 (S.D. Cal. Oct. 21, 2013) ............ 11

*DW Industries, Inc. v. Dentsply Intern., Inc.*,
   171 Fed. App'x 92 (9th Cir. 2006) ............................................................................ 14

*Faegin v. LivingSocial, Inc.*,
   Case No. 14-CV-00418, 2014 WL 5307186 (S.D. Cal. Oct. 15, 2014) ..................... 14

*Fine v. Cambridge Int'l Sys.*,
   584 Fed. Appx. 695, 2014 WL 4214416 (9th Cir. Aug. 27, 2014)............................. 10

*In re FirstMerit Bank, N.A.*,
   52 S.W.3d 749 (Tex. 2001).......................................................................................... 13

*Fridl v. Cook*,
   908 S.W.2d 507 (Tex. App.—El Paso 1995, writ dism's w.o.j.) ............................... 13

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)....................................................................................................... 13

*Gurler v. Westpac Surgical, LLC*,
   No. 2:20-04434, 2020 WL 10317436 (C.D. Cal. Dec. 11, 2020)............................... 15

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
   921 F.3d 522 (5th Cir. 2019) ...................................................................................... 13

*Heston v. GB Cap. Holdings, LLC*,
   Case No. 16-CV-912, 2016 WL 4468254 (S.D. Cal. Aug. 23, 2016) .......................... 7

*Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*,
   183 S.W.3d 891 (Tex. App.—Austin 2006, no pet.) .................................................. 15

*M/S Bremen v. Zapata Off-shore Co.*,
   407 U.S. 1 (1972)........................................................................................................... 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ............................................................... 8

*Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*,
   473 U.S. 614 (1985) ........................................................................... 15

*Morris v. Ernst & Young, LLP*,
   834 F.3d 975 (9th Cir. 2016) ............................................................. 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................................... 14

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ............................................................. 9

*P & P Indus., Inc. v. Sutter Corp.*,
   179 F.3d 861 (10th Cir. 1999) ........................................................... 16

*Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*,
   139 F.3d 1061 (5th Cir. 1998) ........................................................... 15

*Piedmond Label Co. v. Sun Garden Packing Co.*,
   598 F.2d 491 (9th Cir. 1979) ............................................................... 7

*Preston v. Ferrer*,
   552 U.S. 346 (2008) ........................................................................... 12

*Simula, Inc. v. Autoliv, Inc.*,
   175 F.3d 716 (9th Cir. 1999) ................................................. 12, 14, 15

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
   368 F.3d 1053 (9th Cir. 2004) ............................................................. 7

*Tracer Rsch. Corp. v. Nat'l Envtl. Servs. Co.*,
   42 F.3d 1292 (9th Cir.1994) ............................................................... 14

*Unicolors Inc. v. Myth Clothing Co., Inc.*,
   No. 15-cv-9419, 2016 WL 738289 (C.D. Cal. Feb. 22, 2016) ................... 10

*United Comput. Sys., Inc., v. AT&T Corp.*,
   298 F.3d 756 (9th Cir. 2002) ............................................................. 12

*United Steel Workers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) ........................................................................... 14

**Statutes**

9 U.S.C. § 2 ......................................................................... 12, 13

Case No. 8:22-cv-01032-CJC-JDE                    v

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS,
TRANSFER, OR IN THE ALTERNATIVE COMPEL ARBITRATION

9 U.S.C. § 4 .................................................................................................... 12

28 U.S.C. § 1391(b) ........................................................................................ 10

28 U.S.C. § 1391(b)(1) .................................................................................... 10

28 U.S.C. § 1391(b)(2) .................................................................................... 11

28 U.S.C. § 1404 ........................................................................................... 6, 9

28 U.S.C. § 1404(a) ........................................................................................ 11

28 U.S.C. § 1406 ........................................................................................... 6, 9

28 U.S.C. §1406(a) ............................................................................... 7, 8, 10, 11

California Labor Code § 925(e) ........................................................................ 4

Federal Arbitration Act ................................................................................ 5, 6

**Rules**

Fed. R. Civ. P. 12(b)(3) ............................................................................... 7, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................... 7

Defendant REFINED TECHNOLOGIES, INC. ("RTI") respectfully submits this Memorandum of Points and Authorities in support of its Motion to Dismiss for Improper Venue, Motion to Transfer to the Southern District of Texas, or in the alternative Motion to Compel Arbitration.

## I.    INTRODUCTION

RTI and Jeffrey Young agreed to resolve their disputes in Harris County, Texas. Not in California.

Young is a former employee of RTI working for a competitor, USA DeBusk, LLC ("DeBusk"). He resigned from RTI in April and on the same day that he resigned, raced to the Superior Court of Orange County to unwind his employment agreement. Following removal, the case is pending in this Court.

Young's Complaint seeks declaratory relief that four provisions in his employment agreement with RTI are void and unenforceable under California law. But in the agreement, the parties chose Texas as their venue to resolve disputes. In the agreement, the parties also chose arbitration as the mechanism to resolve disputes. Because the parties chose Texas, this Court should dismiss this case for lack of venue or transfer it to the Southern District of Texas where venue is proper. In the alternative, if the Court is not inclined to enforce the parties' agreed venue, the case should still be dismissed and arbitration compelled.

## II.    STATEMENT OF FACTS

### A.    In 2017 Young was hired as operations manager for RTI's West Coast territory.

In November 2017, RTI hired Young as Operations Manager in Bellingham, Washington, with a primary territory of the West Coast. Schuenemann Decl., ¶4. Although California was included in Young's "West Coast" territory, he was not hired by RTI to work mainly in California. *Id*. Rather, in RTI's offer to Young, RTI noted Young's "main focus will be expanding [RTI's] presence in the West Coast marketplace … [and] supporting our efforts in other North American markets which will ultimately enhance your training and business acumen." **Exhibit A**, October 6, 2017 letter to Young; Schuenemann Decl., ¶5.

While based in Washington as Operations Manager, his "position typically require[d] 10 days/nights of travel per month" to these "other North American markets." *Id*. These markets included Washington, California, Utah, and Hawaii in his West Coast Territory and other RTI markets such as Alberta, Canada, Quebec, Canada, Singapore, South Korea, Michigan, Louisiana, and Texas. Schuenemann Decl., ¶5. From 2018 to 2022, less than 50% of Young's recordable time was spent serving the California market. *Id*. at ¶6. And during his time with RTI as an Operations Manager in 2017 to 2021, Young spent about 44% of his time in California, while the remaining, *majority* amount of his time was spent traveling to RTI's other North American Markets. *Id*. This travel included Young's admitted trips to Texas while employed by RTI, including three trips for training and one trip to Texas in 2018 for a refinery project execution for Motiva. *Id*. at ¶7. According to RTI's business records, Young was in Texas for at least 25 days for business purposes during his employment with RTI. *Id*.

On June 7, 2019, Young informed RTI that he was relocating from Washington to California, but Young remained an Operations Manager following the relocation; his job responsibilities did not change. *See id*. at ¶8.

Young remained in his role as Operations Manager in RTI's Washington facility until August 2021 when he transitioned to the title of Hydroprocessing Specialist in RTI's Concord, California office. Schuenemann Decl., ¶9; **Exhibit B**, August 9, 2021 letter to Young. Although based in California, Young spent extensive time in RTI's other North American markets, just as he always had. Indeed, Young regularly traveled outside of California to RTI's markets in Washington, Utah, Hawaii, Michigan, Louisiana, and Texas, and he even traveled outside the United States to RTI's markets in Canada, Singapore, and South Korea. Schuenemann Decl., ¶9. According to RTI's travel records, from November 2017 to December 2021, 119 of Young's 214 travel days—a majority of 56%--took place in a territory *other than* California. *Id*. at ¶6. And according to RTI's project scheduling records spanning from 2018 to 2022, less than 50% of Young's recordable time was spent in California. *Id*.

On December 10, 2021, Young signed a Non-Solicitation Agreement ("Agreement") in Texas. Schuenemann Decl., ¶10; **Exhibit C**, Agreement. In the Agreement, Young and RTI elected Texas law to govern their disputes and Texas as the proper forum to resolve them, subject to the parties' agreement to arbitrate. *See* Ex. C, Agreement at §12.2. Young didn't sign the Agreement for free. In exchange for entering the Agreement, Young received a $15,714 discretionary cash bonus, which was paid 13 days after signing the Agreement. Schuenemann Decl., ¶10. He also received increased and additional access to RTI's confidential information. *Id*.

### B. Young agreed that Texas was the exclusive venue for any dispute with RTI arising out of his employment.

In executing the Agreement, Young acknowledged RTI's promise to provide him access to "Confidential Information" as defined in the Agreement and Young agreed that he "shall receive and accept access to Confidential Information and proprietary training and training materials related to the Business in order to assist Employee in the performance of his or her duties." Ex. A, Agreement, § 2.2. As Young was already employed by RTI for over four years before he signed the Agreement, this access included "***additional*** confidential information and training and continued access to confidential information and training previously provided." Ex. A, Agreement, § 2.2 (emphasis added); Schuenemann Decl., ¶10.

To obtain additional RTI confidential information and his cash bonus, Young made important representations that RTI relied on. For example, Young and RTI elected Texas law to govern their disputes and Texas as the proper forum to resolve them; subject to the parties' right to arbitrate. Ex. C, § 12.2. Young and RTI both "expressly consent[ed] to arbitration as the exclusive forum for any dispute arising under or related to" Young's employment with RTI or the Agreement. Ex. C, § 12.2. And if the Agreement's arbitration provision and the Policy are found unenforceable, the Agreement further provides that "any lawsuit under" the Agreement "may only proceed in the State of Texas and not any other jurisdiction, and that Texas is the exclusive forum and venue for litigation arising under"

the "Agreement, including causes of action sounding in contract law and all other causes of action." *Id*. Young also represented and warranted that he "was individually represented by independent Employee legal counsel in negotiating the terms of this agreement specifically to designate that both the venue and forum will be in Texas for any controversy arising from this Agreement to be adjudicated and for Texas law to apply, consistent with California Labor Code § 925(e)."[1] Ex. C, § 12.2; Schuenemann Decl., ¶12. The parties' selection of Texas as the appropriate venue and forum for any dispute arising from or related to the Agreement could not be more clear.

### C.    Young agreed to arbitrate disputes arising from his employment with RTI.

The "Arbitration Agreement" referenced in the Agreement was amended before the execution of the Agreement and is now entitled the Dispute Resolution & Arbitration Policy (the "Policy"), a copy of which is **Exhibit D**. Schuenemann Decl., ¶ 13, Ex. D, Policy. Young acknowledged and agreed to the Policy within the Artisan Handbook by signing the Receipt and Acknowledgment of the Artisan Handbook attached as **Exhibit E** on August 11, 2021 (the "Acknowledgment"). Schuenemann Decl., ¶14, Ex. E, Acknowledgment.

In the "Dispute Resolution" paragraph of the Policy, Young and RTI agreed to arbitrate "all disputes arising in the workplace and all disputes arising from or related to an Artisan's employment with the Company, including, but not limited to, disputes relating to…termination of employment, breach of contract, … and any common law or statutory

---

[1] This dispute essentially hinges on California Labor Code Section 925(e). Section 925 provides that "[a]n employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would…(1) [r]equire the employee to adjudicate outside of California a claim arising in California…[or] (2) [d]eprive the employee of the substantive protection of California law with respect to a controversy arising in California." Cal. Lab. Code § 925(a)(1)-(2). RTI disputes that Young "primarily resides and works in California," or that its employment agreements with him were "a condition of employment." Setting aside the factual disputes, Section 925(e) provides a critical exception: "This section shall not apply to a contract with an employee who is in fact individually represented by legal counsel in negotiating the terms of an agreement to designate either the venue or forum in which a controversy arising from the employment contract may be adjudicated or the choice of law to be applied." Cal. Lab. Code § 925(e).) In other words, Young was free to select Texas law to govern his employment relationship if he was represented by legal counsel in the negotiation of the term. And he represented to RTI that he was.

claims arising under state or federal law." Ex. D, Policy at "Dispute Resolution." Even more, the Policy expressly "applies to all claims by the Company and claims by" Young. *Id*. at "Scope of Policy."

In summary, to secure RTI confidential information and a cash bonus, Young agreed to arbitrate all of his disputes with RTI; including this contractual dispute. Ex. C, Agreement, §12.2; Ex. D, Policy. He also agreed that Texas law would apply to them, and that the situs of arbitration would be in Harris County, Texas. Ex. C, Agreement, §12.2; Ex. D, Policy at "Choice of Law and Seat" ("Claims arising under federal law will be determined in accordance with federal substantive law. Other common law and state statutory law claims will be determined in accordance with Texas substantive law, without regard to any conflict of law principles. The seat of arbitration will be in Houston, Texas."). And that either he, or RTI, could seek injunctive relief in Texas state court. Ex. D, Policy at "Scope of Policy". He also agreed that, if the arbitration provision is found unenforceable, then any lawsuit must "proceed in the State of Texas and not any other jurisdiction." Ex. C, Agreement, §12.2.

But perhaps most importantly, Young also made an affirmative, written representation to RTI that he had legal counsel in the negotiation of the Agreement. Ex. C, Agreement, §12.2; Schuenemann Decl., ¶12.  And RTI relied on that representation in paying his bonus and providing him access to new confidential information. Schuenemann Decl., ¶12.

The parties "agree[d] to resolve the dispute exclusively by binding arbitration under the Federal Arbitration Act (the 'FAA') and this Policy." Ex. D, Policy at "Confidential Arbitration."

### D.   Young filed suit against RTI in California state court 30 minutes after resigning.

In the final months of Young's tenure with RTI, he had occasion to access confidential and proprietary information on RTI's server. Schuenemann Decl., ¶15. RTI can track user activity on its servers. During the last four months of his employment with

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, TRANSFER, OR IN THE ALTERNATIVE COMPEL ARBITRATION

RTI, Young accessed an average of about 16 files per workday. *Id*. But between April 4-7, 2022 (the week before resigning from RTI) Young's access activity curiously exploded to an average of 70 files per workday. *Id*. The files he accessed contained RTI's confidential client information, along with proprietary methods and processes for chemical cleaning. *Id*.

On or about April 7, 2022, Young left RTI to join RTI's competitor DeBusk as a "sales professional." Schuenemann Decl., ¶16. Within about 30 minutes of terminating his employment, Young filed suit against RTI seeking to unwind his employment agreement. Complaint; Schuenemann Decl., ¶16. The lawsuit is a clear breach of the forum selection clause, and it also makes no mention of the fact that the claims asserted must be decided in arbitration. *See* Ex. C, Agreement, §12.2; Ex. D, Policy at "Dispute Resolution" and "Scope of Policy."

In the Complaint, Young admits that DeBusk is a competitor of RTI and that he intends to compete with RTI while employed by DeBusk. *See* Complaint. Like RTI, DeBusk provides chemical cleaning and mechanical rental services to entities including, but not limited to, petroleum refineries and chemical manufacturing industries, including those in geographic regions prohibited by the Agreement (*i.e.*, to RTI's customers). Schuenemann Decl., ¶17. In the Complaint, Young specifically prays for "an order declaring that Sections 5, 7, 8, and 12.2 of the [Agreement] are void and unenforceable, and that Young is not contractually prohibited from taking employment with [DeBusk] or otherwise competing with [RTI]." Complaint at Prayer.

Young's lawsuit falls within the scope of the Agreement's arbitration provision mandating arbitration of "any dispute arising under or related to" Young's employment or the Agreement, Ex. C, Agreement, § 12.2; *see also* Ex. D, Policy at "Dispute Resolution." Accordingly, this Court should dismiss this case for lack of venue, or transfer it to the Southern District of Texas so that RTI can enforce its arbitration provision. In the alternative, the Court should dismiss this case and compel arbitration.

## III.   LEGAL STANDARD

Young and RTI agreed to resolve disputes exclusively in Texas. Specifically in Harris

County, Texas, in the Southern District of Texas. Instead, Young sued RTI in California state court. RTI has removed the case to this Court and now seeks relief sending it to Texas. This Court can do that in two primary ways: (1) dismissal under 12(b)(3); or (2) transfer to the Southern District of Texas under 28 U.S.C. §§ 1404 and 1406. If the Court is not inclined to do either, it may still compel these parties to arbitration under the Federal Arbitration Act.

Federal Rule of Civil Procedure 12(b)(3) authorizes dismissal for improper venue. Fed. R. Civ. P. 12(b)(3). Plaintiff bears the burden of establishing proper venue. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In considering a motion to dismiss for improper venue, a court need not accept the pleadings as true and may consider facts outside the pleadings. *Doe 1 v. AOL, LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009) (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 323 (9th Cir. 1996)).

Moreover, "[a] forum selection clause is grounds for a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Cedars-Sinai Med. Center v. Global Excel Mgmt., Inc.,* No. CV 09-3627 PSG AJWX, 2010 WL 5572079, at *2 (C.D. Cal., Mar. 19, 2010)(citing *Argueta*, 87 F.3d at 324).

"If the court finds that the case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1126 (C.D. Cal. 2009) (quoting 28 U.S.C. §1406(a)).

In the alternative, if this Court is not inclined to enforce the parties' forum selection, then dismissal is still proper and arbitration should be compelled. Courts characterize motions to compel arbitration as responsive pleadings and will grant them under either Rule 12(b)(6) or 12(b)(1). *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (affirming dismissal in favor of arbitration under 12(b)(6) because "a request for a stay is not mandatory" under the FAA and thus "the district court properly entertained the dismissal motion.") (citations omitted); *Alvarado v. Pacific Motor Trucking Co.*, No. EDCV 14-0504-DOC(DTBx), 2014 WL 3888184 (C.D. Cal. Aug. 7, 2014)

**Case No. 8:22-cv-01032-CJC-JDE**                    7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, TRANSFER, OR IN THE ALTERNATIVE COMPEL ARBITRATION

(dismissing action under 12(b)(1) because the entire dispute was subject to arbitration); *Heston v. GB Cap. Holdings, LLC*, Case No. 16-CV-912, 2016 WL 4468254, at *3 (S.D. Cal. Aug. 23, 2016) ("When granting a motion to compel arbitration, a court may dismiss, rather than stay, the court action when all of the claims will be resolved in the arbitration.").

## IV.    ARGUMENT AND AUTHORITIES

### A.    Young's Complaint must be dismissed for improper venue, or transferred to the Southern District of Texas.

The parties selected Texas as proper forum to resolve disputes. And Harris County, Texas as the proper venue. This Court should dismiss Young's claims because he filed suit in California instead. Or the Court should transfer this case to the proper venue in the Southern District of Texas.

### i. The parties' forum selection clause should be enforced.

"A forum selection clause is grounds for a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). *Cedars-Sinai Medical Center*, 2010 WL 5572079, at *2 (citing *Argueta*, 87 F.3d at 324). "If the court finds that the case has been filed 'in the wrong division or district,' it must 'dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1126 (C.D. Cal. 2009) (quoting 28 U.S.C. §1406(a)). In other words, if the forum selection clause is enforceable, the case should be dismissed or transferred. The forum selection clause here is enforceable because it was negotiated at arm's length and Young even represented that he did so with representation of counsel.

Federal law governs the enforceability of forum selection clauses in diversity actions. *Manetti-Farrow, Inc. v. Gucci Am., Inc*., 858 F.2d 509, 513 (9th Cir. 1988). A forum selection clause is presumptively valid and should not be set aside unless the party challenging enforcement of such a provision can show it is unreasonable or fundamentally unfair. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S., 585, 593-95 (1991); *Chan v. Society Expeditions, Inc*., 123 F.3d 1287, 1295 (9th Cir. 1997). The party challenging a forum-

selection clause—Young, here—bears a "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 325 (9th Cir. 1996).

A forum selection clause is considered "unreasonable" if: (1) the inclusion of the clause in the agreement emerged from fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his or her day in court were the clause enforced; and (3) enforcement would contravene a strong public policy of the forum in which suit was brought. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citing *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 12-18 (1972)). The "unreasonableness" exception to enforcement of a forum-selection clause is to be narrowly construed. *Argueta*, 87 F.3d at 325.

The forum selection clause here is not unreasonable. The clause clearly and unambiguously states "that any lawsuit under this agreement may only proceed in the State of Texas and not any other jurisdiction, and that Texas is the exclusive forum and venue for litigation arising under this Agreement, including causes of action sounding in contract law and all other causes of action." Ex. C, Agreement §12.2. Young had ample opportunity to review the clause, raise objections, and attempt to negotiate or amend that provision. In fact, he had the Agreement for 11 days before signing and returning it. He even represented that he reviewed it assisted by counsel. And despite these opportunities, Young never objected. He executed it. Young cannot now maintain that the clause's inclusion resulted from fraud or overreaching.

Therefore, the Court should enforce the Agreement's forum-selection clause and dismiss the Complaint based on improper forum or venue.

### ii. Transfer to the Southern District of Texas is appropriate to honor the parties' agreed venue.

Setting aside that Harris County, Texas is the appropriate venue, the Court should also find that venue is improper here. If venue is improper, "the case must be dismissed or

transferred under" 28 USC § 1404 and 1406. *Atl. Marine Const. Co.*, 571 U.S. at 56, 62 ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in the clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a 1404(a) motion be denied."). As explained in the section above, the parties selected Harris County, Texas as the appropriate forum and venue. This Court should transfer the case to the Southern District of Texas if it does not dismiss it altogether.

Transfer is also appropriate because venue is also improper here under 28 U.S.C. § 1391(b). Under Section 1391(b), venue is appropriate in: (1) a judicial district in which any defendant resides; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred; or (3) if no such district applies under (1) and (2), any judicial district in which any defendant is subject to the court's personal jurisdiction. When venue is improper, the court has "significant discretion" to dismiss or transfer the action. *Unicolors Inc. v. Myth Clothing Co., Inc.*, No. 15-cv-9419, 2016 WL 738289, at *7 (C.D. Cal. Feb. 22, 2016) (internal citations omitted); 28 U.S.C. § 1406(a) (where a case is filed "in the wrong division or district," the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

All of Young's claims arise out of or are related to the parties' contractual relationship as reflected in the Agreement. As stated above, under the Agreement, "Texas is the exclusive forum and venue for litigation arising under this Agreement, including causes of action sounding in contract law and all other causes of action." Ex. C, Agreement §12.2. So Texas is the proper forum and venue. A*tlantic Marine Constr. Co. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 60 (2013) ("[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*."). As a result, there is an adequate alternative forum to litigate this action under the valid and enforceable forum selection clause of the Agreement. *Id*. at 62-64; *see also Fine v. Cambridge Int'l Sys.*, 584 Fed. Appx. 695, 2014 WL 4214416, at *2 (9th Cir.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, TRANSFER, OR IN THE ALTERNATIVE COMPEL ARBITRATION

Aug. 27, 2014) (holding that if dismissal under forum non conveniens is appropriate, the court need not address other grounds for dismissal).

Second, venue is improper under 28 U.S.C. § 1391(b)(1) because RTI resides in Texas, not California. Schuenemann Decl., ¶2; Ex. C, Agreement, §12.2 (Young "acknowledges that Texas is the Company's principal place of business, that the Employee will or has undergone training in Texas, that the Agreement was drafted, signed, and stored by the parties in Texas, and that the Employee either works primarily in Texas or visits Texas multiple times each year for training.").

Finally, venue is also improper under 28 U.S.C. § 1391(b)(2). When a plaintiff relies on this subsection for proper venue a court must: (1) identify the nature of the action of the claims and the actions and omissions that gave rise to those claims, and (2) determine whether a substantial part of those acts or omissions occurred in the district where the suit was filed. *See Duck Dive LP v. Heydar*, No. 13-cv-1477-BTM (BLM), 2013 WL 5724050, at *2 (S.D. Cal. Oct. 21, 2013).

Here, Young's claims arise out of the Agreement and the parties expressly contracted to resolve disputes arising from the contract in Texas. Young was prohibited from competing in Texas (among other geographic areas). The contract selects Texas law. RTI is based in Texas. And Young admittedly traveled to Texas for training and at least one job for an RTI customer in Texas. He also spent about a cumulative month of time in Texas. Thus, a substantial part of the acts or omissions giving rise to Young's claims (challenging the contract) occurred in Texas, not California. As a result, most of the witnesses and RTI's associated records are in Texas. Therefore, California has minimal interest in adjudicating this action, as California law would not be applied and the majority of material witnesses and associated records are in Texas, not California.

Accordingly, if Young's Complaint isn't dismissed for improper venue, this case should be transferred to the Southern District of Texas under 28 U.S.C. §§ 1404(a) and 1406(a).

**B. Young's Claims Must be Arbitrated.**

If this Court declines dismissal for improper venue, or to transfer the case to the Southern District of Texas, dismissal is still appropriate because the parties agreed to arbitrate this dispute. The arbitration provisions in the Agreement and Policy are valid and enforceable, and broadly encompass all claims arising out of Young's employment with RTI. Ex. C, Agreement, § 12.2; Ex. D, Policy at "Dispute Resolution" and "Scope of Policy."

All contracts with an arbitration provision "evidencing a transaction involving commerce" are subject to the FAA; the FAA applies to this Agreement because it involves Young's employment with and RTI's transaction of business in interstate commerce and elsewhere around the globe. 9 U.S.C. § 2; Schuenemann Decl., ¶ 2. Once a court determines that the FAA applies, it then considers: (1) whether a valid arbitration agreement exists; and (2) whether the scope of the arbitration agreement encompasses the dispute at issue. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citing Section 4 and *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999)). If a party seeking to compel arbitration establishes these two factors, the court must compel arbitration. *United Comput. Sys., Inc., v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *Chiron*, 207 F.3d at 1130 ("If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms.").

### i. The arbitration provision is valid and must be enforced under Texas or California law.

The FAA provides that arbitration agreements generally will be "valid, irrevocable, and enforceable" and permits a party to petition any federal district court for an order compelling arbitration as provided for in the agreement. 9 U.S.C. §§ 2, 4; *Chiron*, 207 F.3d at 1130. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts **shall** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron* 207 at

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS, TRANSFER, OR IN THE ALTERNATIVE COMPEL ARBITRATION

1130 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L.Ed. 2d 158 (1985) (emphasis in original)). So a liberal policy favors arbitration such that valid arbitration agreements must be "rigorously enforced." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms.") (internal quotations omitted). The FAA requires courts to "place arbitration contracts on equal footing with all other contracts." *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 984 (9th Cir. 2016).

Arbitration agreements are generally presumed to be valid. *Ambler v. BT Americas Inc.*, 964 F. Supp. 2d 1169, 1174 (N.D. Cal. 2013) (citing *Chiron*, 207 F.3d at 1130). As the party seeking to avoid arbitration, Young bears the burden of proving the agreement is invalid. *Id.* (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)); *see also Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005) (explaining that party seeking to avoid arbitration can only do so by invoking defenses available to avoid the enforcement of a contract); 9 U.S.C. § 2 (providing that arbitration provisions are valid "save upon such grounds as exist at law or in equity for the revocation of any contract"). Here, RTI and Young entered into a mutual arbitration agreement, and—while Young may complain he should not be required to arbitrate the dispute in Texas (rather than California)—neither party contests the validity of the Agreement's arbitration provision and the Policy itself. *See gen.* Complaint.

Moreover, like California courts and federal courts under the FAA, Texas public policy also favors arbitration. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) ("Because state and federal policies continue to favor arbitration, a presumption exists favoring agreements to arbitrate under the FAA, and courts must resolve any doubts about an arbitration agreement's scope in favor of arbitration.") (citations omitted); *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 537 (5th Cir. 2019) ("courts typically 'indulge every reasonable presumption in favor of arbitration, and [resolve] all doubts as to the arbitrability of an issue…in favor of arbitration.'") (quoting

*Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex. App.—El Paso 1995, writ dism's w.o.j.))*; see also Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212 (Tex. App.—Texarkana 1998, pet. denied) ("Texas courts have concluded that once the existence of an arbitration agreement has been established, then a presumption attaches favoring arbitration…This is a proper placement of the burden under Texas law, given the strong Texas presumption in favor of arbitration.") (citing *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943)). Thus, whether California or Texas law applies is immaterial. Both would compel arbitration here.

### ii. Young's claims fall within the purview of the Policy's arbitration provision.

Young's claims for declaratory relief also fall within the broad scope of the parties' arbitration provision. Federal substantive law governs the scope of an arbitration agreement. *Tracer Rsch. Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir.1994); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Chiron Corp.*, 207 F.3d at 1131 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The Supreme Court has stated the rule this way:

> An order to arbitrate…should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steel Workers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–83 (1960).

Courts interpret arbitration clauses either broadly or narrowly; a contractual provision requiring arbitration of any dispute "arising from or relating to" an agreement is a broad arbitration provision. *See Faegin v. LivingSocial, Inc.*, Case No. 14-CV-00418, 2014 WL 5307186, at *3 (S.D. Cal. Oct. 15, 2014) (citing *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011); *Chiron Corp.*, 207 F.3d at 1131; *DW Industries, Inc. v. Dentsply Intern., Inc.*, 171 Fed. App'x 92, 93 (9th Cir. 2006)). Broad provisions

reach "every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Simula, Inc. v. Autoliv. Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). To resolve all doubts in favor of arbitration, the dispute "need only 'touch matters' covered by the contract." *Id.* at 721 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 624 n. 13 (1985)).

The scope of the Agreement and Policy's arbitration provisions here are even broader—it shows the parties' intent to for any controversies arising under or related to Young's employment or the Agreement to be arbitrated. The Agreement's arbitration provision requires arbitration for "any dispute arising under or related to [Young's] employment or this Agreement," as reflected in the Policy. Ex. C, Agreement at §12.2. And the Policy itself requires the parties to arbitrate "all disputes arising in the workplace and all disputes arising from or related to [Young's] employment with [RTI], including but not limited to, disputes relating to…, termination of employment, breach of contract, …and any common law or statutory claims arising under state or federal law." Ex. D, Policy at "Dispute Resolution." It also mandates that the "Policy applies to all claims by the Company and claims by the Artisan" or employee, Young. *Id*. at "Scope of Policy." The scope of these arbitration provisions therefore encompasses Young's declaratory relief claim that seeks to invalidate certain provisions of the Agreement, which is a "dispute arising under or related to" the Agreement. *See Kirby Highland Lakes Surgery Ctr., L.L.P. v. Kirby*, 183 S.W.3d 891, 898-99 (Tex. App.—Austin 2006, no pet.) (arbitration clause in partnership agreement providing that disputes "arising under or related to" to the agreement were to be arbitrated encompassed claims arising under purchase and sale agreement" and noting the arbitration clause embraces this language, "terminology that federal courts applying the FAA have termed 'extremely broad' and 'capable of expansive reach.'") (quoting *Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd*., 139 F.3d 1061, 1067-68 (5th Cir. 1998)); *see also Gurler v. Westpac Surgical, LLC*, No. 2:20-04434, 2020 WL 10317436, at *1 (C.D. Cal. Dec. 11, 2020) (enforcing arbitration agreement that applied to "all disputes arising under or related to" the agreement at issue in declaratory judgment action seeking to

invalidate the agreement); *Barela v. Brock USA, LLC*, No. SACV 15-00779 JVS (JCGx), 2015 WL 12683955, at *4 (C.D. Cal. Aug. 10, 2015) (compelling all claims to arbitration and dismissing the suit with prejudice where the arbitration provision "requires mandatory arbitration of any disputes 'arising under or related to' the [a]greement" and noting "[a]ll claims with a 'significant relationship' to the agreement 'arise out of and are related' to it, regardless of the label used to describe the claim.") (citing *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999)).

In summary, the arbitration provision aligns with both Texas and California law. And Young's claims fall within the provisions broad scope. If this Court does not dismiss Young's claims for improper venue, or transfer to the Southern District of Texas, it should compel arbitration.

## V.    CONCLUSION

The Agreement and the Policy contain valid, enforceable forum selection provisions requiring this dispute to be resolved in Harris County, Texas. This Court should dismiss Young's Complaint for improper venue. Or, it should transfer this case to the Southern District of Texas were venue is proper. But even if the Court were not inclined to enforce the parties' forum selection, dismissal is still appropriate because the parties agreed to arbitrate Young's claims.

Dated:  May 27, 2022                    McDOWELL HETHERINGTON LLP


                                        */s/ Catherine J. Baumgartner*
                                 By: _____
                                        John T. Burnite
                                        Catherine J. Baumgartner


                                 Attorneys for Defendant
                                 REFINED TECHNOLOGIES, INC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28